**HOUSTON–AMERICAN FINANCE CORPORATION, Appellant,**

v.

**Walter E. TRAVIS et al., Appellees.**

**No. 15677.**

Court of Civil Appeals of Texas.

Dallas.

Dec. 16, 1960.

Rehearing Denied Jan. 27, 1961.

324

Irion, Cain, Cocke & Magee, and Burt Berry, Dallas, for appellant.

Fritz & Vinson, Dallas, for appellees.

YOUNG, Justice.

Our opinion of date October 21, 1960 is withdrawn and in lieu thereof the following is substituted therefor.

This action in trial court was described by appellant corporation as a damage suit instituted by appellees on April 17, 1957 to recover statutory penalty for exaction of usurious interest and for damages, mental and physical, allegedly resulting from the manner in which defendant's agents and servants attempted to collect a balance due on a note executed by plaintiffs. Exemplary damages were also claimed; trial to a jury on special issues resulting in a plaintiffs' verdict for $13,530.48. The note in question was for $810, executed October 15, 1953, repayable under a schedule of installments. It had been negotiated for purpose of taking up two previous loans (to Universal Finance Loans and Royal Finance Company) plaintiffs receiving in consideration from defendant an amount of cash plus payment in full of the debts due these latter loan concerns. Walter E. Travis and Betty Jane Travis, husband and wife at time of earlier transactions, were divorced on October 19, 1955; Betty Jane continuing in the present suit as feme sole and co-plaintiff with Walter E. Travis.

The judgment appealed from recites a separate recovery to each plaintiff of $190.-24 "double damages for usury." In this connection the following stipulation signed by defendant's attorney appears in the transcript: "Defendant, Houston-American Finance Corporation, hereby stipulates that the personal property mortgaged by plaintiffs to Defendant on or about the 15th day of October, 1953, as security for a promissory note for $810.00 signed on the same date by Walter E. Travis and Betty Jane Travis, was repossessed by Defendant, on or about October 1, 1955, and sold by Defendant on or about said date. For the purpose of this suit only it is stipulated that the defendant is not seeking any recovery of the balance owing on the note of 499.50 and hereby cancelled said balance

as uncollectable. It is further stipulated that value of said furniture was $499.50."

In formulating the jury charges and issues therein submitted, the court appears to have refused all issues requested by plaintiff (except in substance as to some;) likewise refusing all save one of defendants' requested issues; the latter excepting to the court's issues submitted along with other objections, as will later be noticed. The jury answers to issues submitted, though lengthy, must now be summarized:

(1) That defendant finance company failed to afford Walter E. Travis an option to select an agent and insurance company of his own choice in connection with the loan of October 15, 1953; (2) that defendant required Walter E. Travis to make application for life insurance and health and accident insurance as a part of the loan transaction of October 15, 1953; (3) that such requirement was in order for defendant company to obtain compensation for the use of its money in excess of 10% per annum; (4) that said defendant made unreasonable collection efforts against Walter E. Travis in connection with the loan here involved; (5) that defendant made collection efforts against Walter E. Travis with reckless disregard of the health and welfare of Walter Travis *or* Betty Jane Travis; (6) that defendant made collection efforts against Walter Travis with purpose of causing Walter Travis or Betty Jane Travis mental or emotional pain and suffering or damage to reputation; (7) that Walter Travis or Betty Jane Travis suffered mental or emotional pain and physical illness or damage to reputation after defendant made such collection efforts; (8) such collection efforts of defendant were a proximate cause of mental or emotional pain and physical illness or damages to reputation of Walter Travis or Betty Jane Travis; (Special Issue A) that the acts and conduct of Universal Finance Loans, Inc. and Royal Finance Service Company were *not* the sole proximate cause of the physical illness or mental suffering and loss of reputation of Walter Travis and Betty

Jane Travis; (Special Issue B) that the conduct of Betty Jane Travis toward Wal-. ter Travis before the divorce case was *not* the sole proximate cause of the physical illness, mental suffering or damage to reputation of Walter Travis; (Special Issue C) that the conduct of Walter Travis toward Betty Jane Travis before the divorce case was *not* the sole proximate cause of the physical illness, mental suffering or damage to reputation of Betty Jane Travis; (9) that the mental or emotional pain and physical illness or damage to reputation of Walter Travis reached its greatest intensity in "Oct-Nov, 1955"; (10) that the mental or emotional pain and physical illness or damage to reputation of Betty Jane Travis reached its greatest intensity in "Nov, 1955"; (11) that the sum of $3,500, if paid now in cash, would reasonably compensate Walter Travis for mental or emotional pain, physical illness and damage to reputation resulting proximately from the unreasonable collection efforts of defendant; (12) that the sum of $4,000, if paid now in cash, would reasonably compensate Betty Jane Travis for mental or emotional pain, physical illness and damage to reputation resulting proximately from the unreasonable collection efforts of defendant; (13) that defendant made collection efforts with the purpose of causing Betty Jane Travis to lose her job with A. Harris & Company; (14) that such collection efforts of defendant were a proximate cause of Betty Jane Travis losing her job with A. Harris & Company; (15) that the sum of $650, if paid now in cash, would reasonably compensate Betty Jane Travis for the loss of her job with A. Harris & Company resulting proximately from the unreasonable collection efforts of defendant; (16) that the agents, servants or employees of defendant acted with malice in committing any of the acts set out in either of above issues 8 or 14; (17) that defendant authorized or ratified the malice referred to in above issue No. 16; (18) that from preponderance of the evidence the amount to be awarded as exemplary damages is $5,000.

Over objection of appellees but prior to submission of this cause, we permitted appellant to file amended and supplemental briefs, pursuant to Rule 431, Texas Rules of Civil Procedure. Although 12 of the original points of error have been thereby eliminated, appellees point out that the amended brief is of greater length, other assignments have been expanded, along with points altogether new; inclusive even of a new theory of defense. A regrettable burden; has thus been imposed upon appellees in matter of amended reply brief, which has been filed, not delaying however the original date of submission. The Rule in question (431) reads in part "briefs may be amended or supplemented at any time when justice requires * * *." It is to be liberally construed. King v. Cron, Tex.Civ.App., 285 S.W.2d 833; requiring of course all points of error to be confined to assignments presented in amended motion for new trial.

Of appellant's points of error, the first four complain of the court's submission of issues 4, 5, 11 and 12 "without limiting the period in question to the two years immediately preceding the filing of plaintiffs' original petition;" then points 5 and 6 complain of error "in submission of issues 9 and 10 without reference to Art. 5526, Sec. 6, V.A.C.S". Remaining points are as follows: (7) error "in permitting testimony of alleged torts committed more than two years prior to the filing of plaintiffs' original petition"; (8) error in refusal of appellant's requested Issue No. 7, the pleading and evidence raising "the issue of the applicability of the two year statute of limitations"; (9) issue 7 of the court's charge "was duplicitous and multifarious because it included in the same issue the questions of physical injuries, mental and emotional injuries, and damage to reputation, as well as whether each such injury was sustained by appellee, Walter E. Travis, and by appellee, Betty Jane Travis"; (10) error in submission of special issues 13, 14 and 15 "since the evidence was insufficient to justify submission of issues on loss of employ-

ment by Betty Jane Travis"; (11) court error "in refusing to set aside the verdict of $650 for loss of employment in answer to special issue No. 15, since it appeared that such verdict was against the preponderance of the evidence"; (12) and error "in refusing to set aside the verdict of the jury, since it appeared that the verdict of the jury was contrary to the evidence". All of above points were properly countered by appellees.

Prior to discussion of points, a general survey of this record is in order. The original petition of plaintiffs was filed April 17, 1957, claiming usury on inception of the loan of date October 15, 1953; alleging in trial pleadings (1st. Amended Original Petition), an ensuing series of unreasonable collection efforts on part of the loan company its agents and servants; that "as a proximate result of the foregoing actions of said defendant, each plaintiff suffered the following illnesses or aggravation thereof from April 17, 1955; thereafter, each party was rendered into a state of high nervousness and irritability, became highly frightened of phone calls, particularly those of defendant, developed severe headaches, requiring plaintiffs to take numerous aspirins in order to be able to stay on the job, developed nervous indigestion, and said plaintiffs partially lost ability to sleep, lost numerous hours lying awake and worrying and fearing, became tired all the time, and became dull at work and far inferior to plaintiffs' previous standard of ability; sank into bad mental health and run down physical condition, and suffered great mental health and run down physical condition, and suffered great mental pain and anguish and resultant illness. Said illness reached its peak during 1956, but still has not ended." To such charges, defendant interposed exceptions and denials; pleading the two year statute of limitations as follows: "Defendant has not been apprised of specific dates relative to the alleged misconduct of its agents and representatives wherein such misconduct would constitute a cause of action based on tort,

but Defendant now invokes and pleads the Two-year Statute of Limitations as to any such allegations. Art. 5526."

Appellant's points one and two bear upon issues 4 and 5 of the court's charge; the jury answering "yes" to each: (Issue 4) "Do you find from a preponderance of the evidence that Houston-American Finance Company made any unreasonable collection efforts against Walter Travis in connection with the loan involved herein?" (Issue 5) "Do you find from a preponderance of the evidence that Houston-American Finance Corporation made any collection efforts against Walter Travis with reckless disregard of the health and welfare of Walter Travis or Betty Jane Travis?" Defendant's objections to both issues were: "for the reason that it is entirely too broad in that it does not refer to any particular act, to any particular time, and amounts to à general charge. Also, that nowhere does said issue confine itself to any acts of Defendant with intent to harm or affect the health of plaintiffs". Appellees properly object to any consideration of points one and two (raising issue of limitation) as not comprehended in the foregoing objection. Texas Employers Insurance Ass'n v. Melton, Tex.Civ.App., 304 S.W.2d 453. Nor can its quoted objections made in the trial court be enlarged on appeal so as to include a different ground of error. 3 Tex.Jur.2d (Appeal & Error) p. 144. These points are otherwise without merit.

Points 3 and 4 relate to issues 11 and 12, now quoted in full: (No. 11) "What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would reasonably compensate Walter Travis for mental or emotional pain, if any; physical illness, if any, and damage to reputation, if any, resulting proximately from unreasonable collection efforts, if any, of Houston-American Corporation? Answer * * * $3500.00." (No. 12) "What sum of money, if any, if paid now in cash do you find from a preponderance

of the evidence would reasonably compensate Betty Jane Travis for mental or emotional pain, if any, physical illness, if any, and damage to reputation, if any, resulting proximately from unreasonable collections efforts, if any, of Houston-American Finance Corporation? Answer * * * $4,000.00". Appellant's objection to these issues, timely made, was as follows: "Defendant excepts * * * for the reason that it is submitted without reference to Article 5526, which statute was plead, and which makes immaterial the period of damage or illness, if any, but makes only the time the tort was committed material." Likewise under points 5 and 6, the same objection was made to issues 9 and 10 reading: (No. 9) "At what time do you find from a preponderance of the evidence did the mental or emotional pain, if any, and physical illness, if any, or damage to reputation, if any, of Walter E. Travis reached its greatest intensity? Answer by giving the month, if any, and the year, if any, ·Answer: Oct-Nov., 1955". (No. 10) "At what time do you find from a preponderance of the evidence did the mental or emotional pain, if any, and physical illness, if any, or damage to reputation, if any, of Betty Jane Travis reached its greatest intensity? Answer by giving the month, if any, and the year, if any, Answer: Nov., 1955". Article 5526 Vernon's Annotated Civil Statutes provides in part: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * 6. Action for injury done to the person of another."

■■■ To repeat: Defendant had excepted to given issues 9, 10, 11 and 12 for the reason that same were "submitted without reference to Art. 5526, which statute was pled, and which makes immaterial the period of damage or illness, if any, but makes only the time the tort was committed material." In view of such plea of limitation, the question arises with respect to its manner of application to any suit for dam-

ages based on unreasonable collection efforts. The answer is explicit in the following statement of principles: (1) "Damages could not be recovered for mental suffering caused by manner in which defendants attempted to collect usurious interest, *in absence of proof of physical injury,* (emphasis ours) and contrary decision would invade province of legislature." Harned v. E-Z Finance Co. et al., 151 Tex. 641, 254 S.W.2d 81 (Syl. 3) ; (2) "Damages for mental anguish, *resulting in physical injuries,* (emphasis ours) allegedly caused by manner in which lenders attempted to collect balances due them on notes given them by borrowers, would be recoverable." Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64 (Syl. 1): (3) "As regards the running of the statute of limitations applicable to torts, a cause of action *accrues only when the force wrongfully put in motion produces injury, the invasion of personal or property rights occurring at that time.* (emphasis ours). 34 Am.Jur. p. 126, citing Texas cases. (4) "When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained * * *." Houston Water Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37. It is seen from above authorities that limitation did not begin to run in the case at bar before occurrence of physical injuries; the defensive plea of limitation being available to restrict the damage issues of plaintiffs to physical illnesses occurring within two years of date of suit (April 17, 1955). Plaintiffs in their pleading sought damage only from and after that time; the court however not limiting the damage issues to such cut-off date; submitting instead issues of when the physical illnesses, etc., reached their greatest intensity. Were defendant's objections and requested issue No. 7 sufficient in the situation thus presented? We think not. They presented an entirely different theory of defense. As we interpret these objections, the bar of limitation was

made applicable only to the *time of collection* contacts, stating that the "period of damage or illness was immaterial." Consistent therewith was the wording of its plea of limitations (above quoted), also its requested issue No. 7 (refused by the court) inquiring of whether such "reasonable collection efforts of Houston-American Finance Corporation, their agents, servants, or employees, made *after April 17, 1955,* if you have hithertofore so found were the proximate cause of any damages, illnesses, or injuries, if any, suffered by plaintiffs, Walter E. Travis and Betty Jane Travis?" (Emphasis ours.) According to plaintiffs, the collection efforts of defendant continued from November 1953 to May 1956; and while, in our opinion, the full sequence of these collection efforts was properly receivable in evidence, the physical injuries, if any, sustained prior to the cut-off date of April 17, 1955 were subject to the bar of limitations upon proper instruction or issue, neither of which was interposed. Rule 279, T.C.P. in part provides: "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; * * *." Points 7 and 8 are sufficiently covered in above discussion and are overruled. We agree that given issues 9 and 10 of when the physical illness of plaintiffs reached its "greatest intensity" have but little bearing on defendant's plea of limitation; establishing no date of inception of physical injuries.

Point 9: The jury answered "yes" to issue 7 asking whether: "Walter Travis or Betty Jane Travis suffered any mental or emotional pain and physical illness or damages to reputation after Houston-American Finance Corporation made such collection efforts, if any you have found in answer to Special Issue No. 4." Defendant's objection thereto and motion for new trial was: "* * * for the reason that it is too general and multifarious, in that the issue refers to mental and

physical damages, and damage to reputation, which is combining two special issues, and amounts to a general charge on damages." Such form of issue was not objectionable on the grounds stated. In suits for personal injuries, various elements going to make up the damages may be grouped in one special issue. Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575. In Traders & General Insurance Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593, 599, on objection of multifariousness (an issue inquiring if injuries received on two separate dates were the producing cause of incapacity,) it was held that: "The two injuries, taken together, constituted the final ultimate issue. * * * Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. In cases like this, where a group of facts are relied upon to make up the ultimate issue, it is not only permissible but often becomes indispensable to group them and present them in a single inquiry, to enable the court to ascertain if the ultimate end sought has been established." Point 9 further complains of the issue as duplicitous in that it includes two different persons (Walter Travis and Betty Jane Travis). Of course, this enlargement of point cannot be considered because not assigned as a ground of error in motion for new trial. Andrews v. Dewberry, Tex.Civ.App., 242 S.W.2d 685; Simonton v. Taylor, Tex.Civ. App., 306 S.W.2d 775.

Under further points appellant complains that the verdict of $650 in favor of Betty Jane Travis for loss of employment caused by defendant, had either no support in the evidence or was against its preponderance. The narrative of testimony in defendant's brief, without more, sufficiently negatives the asserted lack of evidence as regards issues 13 and 14. And the testimony was adequate concerning the amount of damages ($650.). Betty testified that after being "fired" at A. Harris & Company in October 1955, she worked about a month, though sick, at another place; then becoming critically ill, and not going back to work until after about six.

months. Her wage at A. Harris & Company was $27.50 per week; and the out-of-work time just reflected in the record would closely approximate the amount of jury verdict in answer to issue 15. In point 9, error is asserted in the court's refusal to set aside the verdict of the jury, since it appears that the verdict of the jury was contrary to the evidence. The assignment was not contained in appellant's motion for new trial. Aside from this, would not such an assignment fail because it does not distinctly set forth any ground of error? Rule 374. See also Kolacny v. Pelech, Tex.Civ.App., 201 S.W.2d 257.

We conclude that no reversible error appears in this record, and judgment of the trial court is accordingly affirmed.